## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

JACQUELYN A. ALLEN,          )
                                 )
                 **Plaintiff,**    )
                                 )
                   **v.**        )     **Case No. 3:22-cv-0048**
                                 )
**VIRGIN ISLANDS HOUSING AUTHORITY,**  )
                                 )
                 **Defendant.**   )
                                 )

**APPEARANCES:**

**Jacquelyn A. Allen,** *Pro se*
ST. THOMAS, U.S. VIRGIN ISLANDS
     *Plaintiff*

### MEMORANDUM OPINION

**MOLLOY, Chief Judge**

    This case is before the Court upon the motion of *pro* se Plaintiff, Jacquelyn A. Allen, to proceed *in forma pauperis* (IFP) (*see* ECF No. 2) and for initial screening of Plaintiff's pleading pursuant to 28 U.S.C. § 1915(e)(2).[1]

### I. FACTUAL ALLEGATIONS

    Plaintiff is a citizen of St. Thomas, U.S. Virgin Islands. It appears that, at the time of filing her Complaint (Compl.) (ECF No. 1) on August 2, 2022, Plaintiff was a resident at the Lucinda Millin public housing community, owned and operated by the Virgin Islands Housing

---

[1] In all actions where a plaintiff submits an application to proceed *in forma pauperis*, the Court must conduct an initial review pursuant to 28 U.S.C. § 1915(e)(2). Subparagraph (e)(2)(B) of the statute provides, in relevant part:

    [t]he court shall dismiss the case at any time if the court determines that-- . . .

    (B) the action or appeal--

        (i) is frivolous or malicious;

        (ii) fails to state a claim on which relief may be granted; or

        (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. §1915(e)(2)(B).

Authority (VIHA).[2] Plaintiff asserts claims against VIHA for violation of her "civil, [sic] and constitutional rights as well as ADA and fair housing laws." *Id*. at 5.

Specifically, Plaintiff alleges that she moved into Apartment 63, Lucinda Millin, on June 22, 2022. Compl. at 3. She further alleges that the apartment is located next to a busy street and that, as a result, she is subject to loud road noise. *Id*. Plaintiff next alleges that on July 14, 2022, she submitted a "request for reasonable accommodation" to VIHA for a asking that she be moved to another apartment, away from the street, because the road noise is causing her anxiety. *Id*. at 4; ECF No. 1-1 (the document is dated July 12, 2022). According to Plaintiff, VIHA orally refused her request, indicating that she needed to submit confirmation from a doctor that she suffers from anxiety. Compl. at 4.[3] Plaintiff attaches a copy of correspondence addressed to VIHA, dated July 26, 2022, indicating that she attempted to obtain the documentation, but she could not afford the doctor's fees. *See* ECF No. 1-3. Plaintiff also alleges harassment by VIHA security guards and other Lucinda Millin residents. *Id*. at 5. Plaintiff asks the Court to "order Defendant to move [her] to an apartment with a bedroom away from the street." *Id*. at 6. No damages are sought. *See id*.

## II. STANDARD OF REVIEW

The authority to allow litigants to proceed without the prepayment of fees is found in 28 U.S.C. Section 1915. Section 1915(a)(1) provides, in pertinent part:

> [A]ny court of the United States may authorize the commencement . . . of any suit, action or proceeding, . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner [person] possesses that the person is unable to pay such fees or give security therefor. . . .

28 U.S.C.S § 1915(a)(1) (alteration in original). *See also Rodriguez v. Wawa Inc*., 1:18-cv-13586-NLH-JS, 2020 U.S. Dist. LEXIS 49365, *2 (D.N.J. Mar. 23, 2020) ("[A]lthough § 1915 refers to "prisoners," federal courts apply § 1915 to non-prisoner IFP applications . . .." (citing *Hickson v. Mauro*, Civil Action No. 11-6304, 2011 U.S. Dist. LEXIS 137260, at *1 (D.N.J.

---

[2] Plaintiff's last contact with the Court is a filing that includes correspondence addressed to her from VIHA indicating that VIHA was contemplating initiating an eviction action against her for non-payment of rent. *See* ECF No. 8, docketed January 24, 2023. No further filings appear in the record.

[3] Plaintiff attaches a copy of internal VIHA email correspondence stating that a document from Plaintiff's "medical provider" was necessary to "determine" how VIHA would "be able to" accommodate her request. *See* ECF No. 1-2.

Nov. 30, 2011) (citing *Lister v. Dep't of Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005) ("Section 1915(a) applies to all persons applying for IFP status, and not just to prisoners.")) (other citations omitted))).

Where a plaintiff has applied for leave to proceed *in forma pauperis*, a court must screen the complaint for cognizable claims and *sua sponte* dismiss all or any part of an action that is "frivolous," "malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Furthermore, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *quoted in Emrit v. Barkley*, No. 23-1275, 2023 U.S. App. LEXIS 11188, at *2 (3d Cir. May 8, 2023). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Neitzke*, 490 U.S. at 327.

When considering whether an action is malicious, the Court:

> must, in accordance with the definition of the term 'malicious,' engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant." *Deutsch v. United States*, 67 F.3d 1080, 1086 (3d Cir. 1995). In that regard, "a district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. A. No. 11-841, 2012 U.S. Dist. LEXIS 4929, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

*Bush v. Phila. Redevelopment Auth.*, Civil Action No. 20-CV-5631, 2021 U.S. Dist. LEXIS 4348, at *4-5 (E.D. Pa. Jan. 8, 2021); *see also Donahue v. Dauphin Cty.*, 852 F. App'x 630, 632 (3d Cir. 2021) ("[T]his Court and our sister circuits have held that '[r]epetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious.'" (quoting *McWilliams v. Colorado*, 121 F.3d 573, 574 (10th Cir. 1997) (internal quotation marks and citation omitted))); *Cunningham v. JP Morgan Chase Bank N.A.*, 815 F. App'x 686, 687 (3d Cir. 2020) ("'A court that considers whether an action is malicious must . . . engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.'" (quoting *Deutsch v. United States*, 67 F.3d 1080, 1086 (3d Cir. 1995)).

Whether a complaint fails to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) is governed by the same standard as Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g., Green v. LG Elecs. USA*, No. 23-1062, 2023 U.S. App. LEXIS 14393, at *4 n.1 (3d Cir. June 9, 2023) ("The standard for dismissal under Rule 12(b)(6) and § 1915(e)(2)(B)(ii) though is the same." (citing *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard in appeal of dismissal under § 1915(e)(2)(B)(ii))). Accordingly, a court must determine whether the complaint includes "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks omitted).

Finally, the remaining ground for dismissal under § 1915, immunity of the defendants, relates to the protection the law affords certain governmental entities and officials against particular types of lawsuits. 28 U.S.C. § 1915(e)(2)(B)(iii).

Pleadings drafted by a *pro se* litigant, "however inartfully pleaded," are held to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Accordingly, such *pro se* pleadings are to be "liberally construed." *Estelle*, 429 U.S. at 106. The principles requiring generous construction of *pro se* complaints are not without limits, however. Courts are not required "to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Moreover, "a pro se plaintiff 'must still plead the essential elements of his claim and is not excused from conforming to the standard rules of civil procedure.'" *Nayak v. Voith Turbo, Inc.*, No. 1:14-cv-01053, 2015 U.S. Dist. LEXIS 46469, at *10-12 (M.D. Pa. Apr. 9, 2015) (quoting *Smith v. Social Security Administration*, 54 F. Supp. 2d 451, 454 (E.D. Pa.1999) (citation omitted) (also citing *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."))); *Sykes v. Blockbuster Video*, 205 F. App'x 961, 963 (3d Cir. 2006) (opining that *pro se* litigants, filing in federal court, are expected to comply with the Federal Rules of Civil Procedure). In addition, the "Court need not . . . credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Purpura v. JPMorgan Chase*, Civil Action No. 16-3765, 2017 U.S. Dist. LEXIS 43946, at *8 (D.N.J. Mar. 24, 2017) (quoting *D'Agostino v.*

*CECOM RDEC*, Civ. Action No. 10-4558(FLW), 2010 U.S. Dist. LEXIS 95666, at *1 (D.N.J. Sept. 13, 2010) (internal quotation marks omitted).

### III. DISCUSSION

#### A. Motion to Proceed in Forma Pauperis

The federal *in forma pauperis* ("IFP") statute, 28 U.S.C. § 1915, "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). Even though "Section 1915 refers to 'prisoners,' federal courts apply Section 1915 to non-prisoner IFP applications." *Cuello v. District of New Jersey*, Civil Action No. 06-2117 (MCA), at *1 (D.N.J. May 2, 2016) (citations omitted). As the *Cuello* court notes, "[t]he decision to grant or deny an IFP application is based solely on the economic eligibility of the litigant." *Id. See also Deutsch v. United States*, 67 F.3d 1080, 1085 n. 5 (3d Cir. 1995) ("In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence." (citing *Roman v. Jeffes*, 904 F.2d 192, 194 n.1 (3d Cir. 1990))). A party need not be destitute to warrant such status. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). An affidavit demonstrating that the petitioner cannot, because of her poverty, provide herself and any dependents with the necessities of life is sufficient. *Id*.; *Deutsch*, 67 F.3d at 1085 n. 5 ("We review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." (citing *Roman v. Jeffes*, 904 F.2d 192, 194 n.1 (3d Cir. 1990)).

Upon review of Plaintiff's motion, the Court finds that it is incomplete. In particular, Plaintiff failed to disclose any "[a]mount of money [she has] . . . in cash or in a checking or savings account" as required under paragraph numbered three. *See* ECF No. 2 at 1. Moreover, in the "other income" section in paragraph numbered two, Plaintiff indicated that she was receiving disability income, *id*., but, according to the attachment, her disability benefits terminated in June 2022, *see* ECF No. 21-1, and she did not indicate any other income or income sources. Without a complete picture of Plaintiff's financial state, the Court is unable to make a determination regarding Plaintiff's eligibility. Accordingly, Plaintiff's motion to proceed *in forma pauperis* will be denied, but without prejudice to allow her to resubmit a properly and fully completed form, if she so desires.

*Allen v. Virgin Islands Housing Authority.*
Case No. 3:22-cv-0048
Memorandum Opinion
Page 6 of 16

**B. *Section 1915 (e)(2) Screening***

As stated *supra*, the screening provisions of the IFP statute require a federal court to dismiss an action *sua sponte* if, among other things, the action is frivolous or malicious, or if it fails to comply with the proper pleading standards . . .." *Rodriguez v. Wawa Inc.*, 1:18-cv-13586-NLH-JS, 2020 U.S. Dist. LEXIS 49365, *2 (D.N.J. Mar. 23, 2020), *aff'd*, 33 F. App'x 933 (3d Cir. 2021) (citing 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *Martin v. U.S. Dep't of Homeland Sec.*, Civil Action No. 17-3129, 2017 WL 3783702, at *1 (D.N.J. Aug. 30, 2017) ("Federal law requires this Court to screen Plaintiff's Complaint for sua sponte dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit.")).

Plaintiff claims that VIHA has "violated [her] civil, [sic] and constitutional rights as well as ADA and fair housing laws, US Code 242, 241 Title 18."[4] Compl. (ECF No. 1) at 5. Plaintiff also claims harassment by VIHA security guards and other Lucinda Millin residents. *Id*. In support of her claims, Plaintiff alleges that she suffers from a disability that is exacerbated by loud noise and heat. Compl. at 1. She states that the apartment in which she resides is very close to the road and that this proximity to road noise causes her anxiety. Compl. at 4; ECF No. 1-1 at 2 and 3. Plaintiff also claims that she has "become hypervigilant and suffer[s] from anxiety [she] normally do[es] not experience and [has] had digestive problems and difficulty breathing." Compl. at 6. Plaintiff alleges that she requested that VIHA move her to another apartment away from the road as a "reasonable accommodation" for her anxiety. ECF No. 1-1. In response to her request, Plaintiff avers that VIHA informed her

---

[4] Sections 241 and 242 of Title 18 of the United States Code are criminal statutes and not enforceable by Plaintiff in a civil action. *See, e.g., Wright v. United States*, No. 22-1164, 2023 U.S. App. LEXIS 17910, at *6 (3d Cir. July 14, 2023) ("Wright's attempts to raise civil claims to enforce sections 153, 241, 242, 371, 1503, and 1951 of the Federal Criminal Code fail because the statutes she cited do not create a private cause of action." (citing *Leeke v. Timmerman*, 454 U.S. 83, 85-86 (1981) (explaining that a private party has no right to compel the enforcement of criminal laws))). Therefore, the Court includes no discussion of these statutes herein.

On page two of her Complaint, Section C, in addition to 18 U.S.C. §§ 241 and 242, Plaintiff lists "Amendment 13" of the Constitution as a basis for her claims. Compl. at 2. The Thirteenth Amendment abolishes slavery. Nothing is Plaintiff's Complaint can be construed as a violation of the prohibition of slavery. Hence, the absence of any Thirteenth Amendment analysis herein.

Plaintiff has filed with the Court photocopies of 28 U.S.C. §§ 1346, 2401, 2671, and 2680, without comment, as a supplement to her complaint. *See* ECF No. 3. Those statutes concern suits brought against the United States as a defendant. Plaintiff has named only VIHA as a defendant in this case. Consequently, those statutes are inapplicable, and the Court will not address them herein.

that "they could not move [her] without a Dr[.]'s letter confirming" her claimed disability. Compl. at 4; ECF Nos. 1-2, 1-3. Plaintiff is silent regarding whether she eventually provided the requested letter, and the record is devoid of the filing a copy of such a document with the Court. Plaintiff also fails to state whether VIHA formally denied her request. From the evidence in the record, it appears that Plaintiff interpreted VIHA's demand for confirmation of her disability as a denial and commenced this action in lieu of complying therewith. The Court understands the complaint to allege that such "denial" of Plaintiff's request for "reasonable accommodation" constitutes disability discrimination against Plaintiff.

Upon review of Plaintiff's filings, the Court determines that Plaintiff's complaint is not malicious nor frivolous nor that Defendant is immune from suit.[5] Liberally construing the Complaint, the Court finds that Plaintiff brings claims for discrimination under 42 U.S.C. § 1983, Title VIII of the Civil Rights Act or the Federal Fair Housing Act (FFHA or FHA, as amended), the Rehabilitation Act (RA), and the Americans with Disabilities Act (ADA). The

---

[5] Suits against a state, state official, or state agency are barred from being brought in federal court by the Eleventh Amendment of the Constitution. *See, e.g., Kirkland v. Dileo*, 581 F. App'x 111, 116 (3d Cir. 2014) ("The Supreme Court interprets the Eleventh Amendment to protect states as well as their agencies and departments from suit in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). A state agency or department is characterized as an "arm of the state", and is also entitled to immunity from suit under the Eleventh Amendment, when a judgment against it "would have had essentially the same practical consequences as a judgment against the State itself." *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989) (en banc).").

Virgin Islands courts, including this Court, have found that VIHA is not an "arm of the state." *See, e.g., Williams v. V.I. Hous. Auth.*, Civil No. 2005-0009, 2007 U.S. Dist. LEXIS 98197, at *18 (D.V.I. Oct. 24, 2007) (where the Court declares, "[T]he Court finds that VIHA should not be considered an 'arm of the State'" for purposes of liability under 42 U.S.C. § 1983) (relying on *Greaux v. Gov't of the V.I.*, 14 V.I. 160 (Terr. Ct. 1977)) (where the court dismissed plaintiff's negligence suit brought against the Government of the Virgin Islands as the only defendant for acts attributable solely to the Virgin Islands Housing Authority))); *Petersen v. V.I. Water & Power Auth.*, Case No. ST-08-CV-577, 2009 V.I. LEXIS 20, at *3, *10 (Super. Ct. Oct. 16, 2009) (where the court, after applying the "Third Circuit's test for determining whether an entity is an arm or 'alter ego' of the Government for Eleventh Amendment purposes" concludes that "WAPA is not an arm of the Government of the Virgin Islands" for tort claims) (citing *Greaux*, 14 V.I. 160); *Rosa v. V.I. Hous. Auth.*, 43 V.I. 131, 135-36 (Terr. Ct. 2001) ("Consequently, by creating VIHA as a public body corporate and politic, and decisively conferring it with the power to sue and be sued, the government was clearly and unequivocally waiving sovereign immunity with respect to VIHA in its capacity as a 'separate entity' from the government." (citing *Greaux*, 14 V.I. 160), *cited in Brooks v. Hous. Auth.*, 984 A.2d 836, 849 (Md. 2008) ("Courts from other jurisdictions have likewise recognized that similarly worded statutes completely waive housing authorities' immunity. *See, e.g., Rosa v. V.I. Housing Auth.*, 43 V.I. 131, 135-36 (Terr. Ct. 2008) [sic] (citing *Greaux v. Gov.*, 14 V.I. 160 (Terr. Ct. 1977)) (discussing how the housing authority's sovereign immunity was originally waived, but a subsequent amendment to the statute specifically limited the housing authority's liability to $ 50,000 [sic], permitting the housing authority to claim immunity from judgments over that amount.)")). Based upon this authority, the Court finds that VIHA does not enjoy Eleventh Amendment immunity.

Court analyzes these claims under the Fed. R. Civ. P. 12(b)(6) failure to state a claim upon which relief can be granted standard.

### 1. Section 1983

It is well established that "Section 1983 creates a federal cause of action for alleged violations, pursuant to state action, of a citizen's rights, privileges or immunities secured by the Constitution and Laws of the United States." *Hopkins v. Springfield Hous. Auth.*, No. 11-3347, 2014 U.S. Dist. LEXIS 98824, at *16 (C.D. Ill. July 21, 2014), *aff'd*, 592 F. App'x 528 (7th Cir. 2015); *see also Caldwell v. Twp. of Middletown*, Civil Action No. 13-762, 2013 U.S. Dist. LEXIS 168662, at *7-8 (E.D. Pa. Nov. 26, 2013) ("'Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights.' . . . Consequently, in order to state a claim for relief pursuant to § 1983, 'a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States.'") (citations omitted)).

In *Hopkins*, the plaintiff alleged violations of the ADA and Fair Housing Act, in addition to a violation of Section 1983. Upon consideration of the claims, the *Hopkins* court:

> concludes that Plaintiff cannot assert a separate § 1983 cause of action for deprivation of his rights under either the ADA or the Fair Housing Act. While a plaintiff may bring a § 1983 suit to enforce rights defined by federal statutes, "[a]n exception to this general rule exists when a comprehensive remedial scheme evinces a congressional intent to foreclose resort to section 1983 for remedy of statutory violations." *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999) (citing *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 10-21, 101 S. Ct. 2615, 69 L. Ed. 2d 435 (1981)).
>
> The Court presumes that Congress intended for the enforcement mechanisms provided in the ADA and Fair Housing Acts to be exclusive. Because the Plaintiff has not alleged the deprivation of any other right, privilege or immunity secured by the Constitution or laws of the United States, the Plaintiff's § 1983 claims asserted in Count III shall be dismissed.

*Hopkins*, 2014 U.S. Dist. LEXIS 98824, at *17. The Court finds this reasoning persuasive and adopts it here. Consequently, the Court will dismiss any claim that could be construed to allege disability discrimination as a violation of Section 1983.

### 2. Federal Fair Housing Act

Title VIII of the Civil Rights Act of 1968, codified at 42 U.S.C. §§ 3601 *et seq.*, also known as the Fair Housing Act, was amended by the Fair Housing Amendments Act of 1988.

> The Fair Housing Amendments Act ("FHAA") bars discrimination against disabled people in the sale or rental of housing and requires reasonable accommodations in "rules, policies, practices, or services" as necessary to allow a handicapped person to use and enjoy a dwelling. 42 U.S.C.A. § 3604(f). There are three types of claims that a plaintiff with a disability may bring under the FHAA: 1) intentional discrimination, or disparate treatment, claims; 2) disparate impact claims; and 3) claims that a defendant refused to make "reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." <u>Cmty. Servs., Inc. v. Wind Gap Mun. Auth.</u>, 421 F.3d 170, 176 (3d Cir. 2005) (citing 42 U.S.C. § 3604(f)(3)(B)).
>
> The text of the FHAA precludes discrimination in the sale or rental of a dwelling or in providing services or facilities in connection with that dwelling. 42 U.S.C.A. § 3604. Typically, this act is used to bring suits against landlords, but courts have also held that this act applies to suits against municipalities and land use authorities. <u>Wind Gap</u>, 421 F.3d at 176.

*Spieth v. Bucks County Hous. Auth.*, 594 F. Supp. 2d 584, 592 (E.D. Pa. 2009), *quoted in Emrit v. Lycoming Hous. Auth.*, Civil Action No. 4:16-CV-02022, 2017 U.S. Dist. LEXIS 76178, at *15-16 (M.D. Pa. May 17, 2017); *see also Brooker v. Altoona Hous. Auth.*, Civil Action No. 3:11-CV-95, 2013 U.S. Dist. LEXIS 82228, at *20 (W.D. Pa. June 12, 2013) ("These provisions are applicable to housing units provided by the Authority. 42 U.S.C. § 3603(a)."). Here, Plaintiff alleges that VIHA refused her request for an accommodation.

> In order to plead a Fair Housing Act claim based on an alleged failure to provide a reasonable accommodation, a plaintiff must show that (1) he or she suffers from a disability (as defined by 42 U.S.C. § 3602(h)(1)); (2) the defendant knew or should have known of the disability; (3) a reasonable accommodation of the disability might be necessary to afford the plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendant refused to make such reasonable accommodation.

*Funyak v. Pennrose Mgmt. Co.*, 2:19-CV-01331-CCW, 2021 U.S. Dist. LEXIS 135617, at *9 (W.D. Pa. July 21, 2021) (citing *Bell v. Tower Mgmt. Serv., L.P.*, Civil Action No.: 07-CV-5305(FLW), 2008 U.S. Dist. LEXIS 53514, at *8 (D.N.J. July 15, 2008) (quoting *United States v. Port Liberte Condo 1 Ass'n, Inc.*, Civ. No. 04-2783(DRD), 2006 U.S. Dist. LEXIS 70573, at *13 (D.N.J. Sept. 27, 2006))) (other citation omitted)).

Plaintiff avers that she suffers from anxiety, apparently the only disability upon which her claim is grounded, since no other health condition or impairment is mentioned in the complaint.[6] *See* Compl. at 4 and *passim*. The determination of whether anxiety qualifies as a disability under 42 U.S.C. § 3602(h)(1), that is, whether it "substantially limits one or more of [her] major life activities" is a question of fact to be determined at trial. *See, e.g., Bedell v. Long Reef Condo. Homeowners Ass'n*, Civil No. 2011-051, 2013 U.S. Dist. LEXIS 172031, at \*21-27 (D.V.I. Dec. 6, 2013).

Even if the Court accepts as true that Plaintiff "suffers from a disability" as defined in the statute, Plaintiff's claim falls short. Regarding the second element, nothing in any of Plaintiff's filings establishes that VIHA "knew or should have known" of her claimed disability. Plaintiff states that upon receiving Plaintiff's request for accommodation, VIHA told her "that they could not move [her] without a Dr[.]'s letter confirming that [she] suffer[s] from anxiety." Compl. at 4. To maintain her failure to accommodate claim, Plaintiff must show that VIHA knew or should have known of her disability. Anxiety is not necessarily a visible impairment. Moreover, Plaintiff has not alleged how VIHA would have, could have, or should have known of her anxiety other than her merely telling them. Without any observation or documentation of her disability, the Court is at a loss to understand how VIHA otherwise knew or should have known of its existence. *See, e.g., Brooker*, 2013 U.S. Dist. LEXIS 82228, at \*29-31 ("In order to proceed with her 'failure-to-accommodate' claims, Brooker must demonstrate that the Authority 'knew or reasonably should have known' of her disability and concomitant need for reasonable accommodations . . .. The burden was on her to inform the Authority that she was a 'qualified handicapped person' who was 'being denied an equal opportunity to use and enjoy a dwelling.' A public housing agency cannot be expected to accommodate a disability that is not known to exist." (citations omitted)); *Bezi*

---

[6] Plaintiff has filed with the Court a doctor's script, dated October 4, 2022, that reads, "This patient is under my care for a dermatitis that is exacerbated by heat and a hot environment. (her apartment)" ECF Nos. 6-1 and 8-1. There is no indication that this condition is related to Plaintiff's request for accommodation, allegedly submitted on July 12, 2022, to be moved to an apartment away from the road. *See* Compl. at 4. Without some "nexus" between the requested accommodation and its "necessity for affording . . . equal opportunity to enjoy public housing," *Brooker*, 2013 U.S. Dist. LEXIS 82228, at \*44 (citation omitted), the Court finds that this document does not support Plaintiff's claim. "A proposed accommodation cannot be said to be 'necessary'" if it 'provides no direct amelioration of a disability's effect.'" *Id.* at \*44 (quoting *Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 604 (4th Cir. 1997)) *quoted in Goldsmith v. CBS Tv Broad., Pittsburgh, Inc.*, Civil Action No. 213-cv-00478), 2015 U.S. Dist. LEXIS 38506, at \*16 (W.D. Pa. Mar. 26, 2015).

*v. Camacho*, Case No. CV 11-0677-MMM (DTB), 2012 U.S. Dist. LEXIS 162852, at *52-55 (C.D. Cal. Sept. 8, 2012) ("However, it is simply not clear on these facts that defendants knew or reasonably should have known of plaintiff's handicap or disabilities. Indeed, the conditions described by plaintiff are not disabilities that are necessarily visible, such as the use of a wheelchair or walker would be, and she does not allege that she walked with an abnormal [sic] gate or limp, or that her ailments were obvious to the even untrained eye . . . ." (citation omitted)). Based upon the facts currently before it, the Court finds that Plaintiff's allegations do not satisfy this element of her claim. Further, although the Court need not reach the final element of the claim, the Court also finds that Plaintiff has not adequately alleged that VIHA "refused" to make the requested reasonable accommodation. Consequently, the Court will dismiss this claim.

### 3. Rehabilitation Act and the ADA

Courts have held that because the requirement for reasonable accommodation claims under the FHAA, the Rehabilitation Act, and the ADA are so similar, the analysis for fair housing claims can be equally applied to claims brought under the RA and the ADA. *Funyak*, 2021 U.S. Dist. LEXIS 135617, at *9 ("'Since the requirements of the FHAA, ADA and Rehabilitation Act are essentially the same, courts have concluded that the FHAA analysis can be applied to ADA and Rehabilitation Act claims as well in such cases where claims are brought under all three statutes.' *Yates Real Estate, Inc. v. Plainfield Zoning Bd. of Adjustment*, 404 F.Supp.3d 889, 914 (D.N.J. 2019) (quoting *In re Lapid Ventures, LLC*, No. 10-6219, 2011 U.S. Dist. LEXIS 63973, at *14 (D.N.J. June 13, 2011))); *Wilson v. Wilder Balter Partners, Inc.*, No. 13-CV-2595 (KMK), 2015 U.S. Dist. LEXIS 19178, at *19-20 (S.D.N.Y. Feb. 17, 2015) ("[B]ecause '[t]he relevant portions of the FHA, ADA, and Section 504 . . . offer the same guarantee that a covered entity, such as a public housing authority, must provide reasonable accommodations in order to make the entity's benefits and programs accessible to people with disabilities[,] . . . analysis of a reasonable [accommodation] claim under the three statutes is treated the same.'" (quoting *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 337 (E.D.N.Y. 2012) (alterations, citations, and internal quotation marks omitted) (other citations omitted))).

The Court already has found herein that Plaintiff has not alleged a plausible claim for a violation of the FHAA for failure to accommodate. Based upon that analysis, the Court also finds that, to the extent Plaintiff alleges any claim under the Rehabilitation Act and/or the ADA, such claims also fail and will be dismissed.

### 4. Harassment

Plaintiff asserts that she is "repeatedly followed and harassed" by the Lucinda Millin security guards and other residents. Compl. at 5. In her filing docketed as "Motion for Ruling on Previous Filings," (ECF No. 7), Plaintiff describes more particularly that her neighbor has "threatened to assault" her. ECF No. 7 at 1-2. In addition, her neighbor's boyfriend sexually harasses her and has "made repeated verbal threats to assault" her. *Id*. at 2. Plaintiff also declares that the "manager of Lucinda Millin . . . has threatened to push me down the stairs on two occasions." *Id*. at 3. Regarding the security guards, Plaintiff alleges that the "security guard who resides on the third floor has threatened to physically and sexually assault me on numerous occasions . . .." She also claims that the "overnight security guard was ridiculing" her "because she was awakened by trucks revving engines outside" her apartment. *Id*. Plaintiff states that she has reported the threats to police and made complaints to "housing" which have been ignored. *Id*. at 2-3. Although Plaintiff does not explicitly allege that the non-response to her complaints are racially motivated, she notes that she is the "only Caucasian residing in that building." *Id*. at 4. Thus, the complaint could be liberally construed as alleging sexual and/or disability harassment by both the VIHA security guards and other residents and racial harassment by VIHA.

> The FHA provides in relevant part that it is unlawful "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . sex . . . ." Notably, this provision "refers not just to the sale or rental itself, but to certain benefits or protections flowing from and following the sale or rental." Accordingly, several courts from sister circuits have held that Section 3604(b) extends to post-acquisition conduct and imposes a duty "not to permit *known* harassment on *protected* grounds."

*Doe v. Univ. of Scranton*, No. 3:19-CV-01486, 2020 U.S. Dist. LEXIS 187526, at *22 (M.D. Pa. Oct. 9, 2020) (footnotes omitted).

Courts have categorized the type of claims made by Plaintiff as "hostile housing environment" and apply the same analysis as a Title VII sexual harassment hostile environment claim. *See, e.g., Fox v. Gaines*, 4 F.4th 1293, 1296 (11th Cir. 2021) ("When interpreting the FHA, we—like our sister circuits—look to cases interpreting Title VII, which uses language virtually identical to the FHA's . . .. Turning to cases interpreting Title VII confirms our conclusion that the FHA prohibits sexual harassment." (footnote and citations omitted)); *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67 (2d Cir. 2021) (*en banc*), *vacating Francis v. Kings Park Manor, Inc.*, 944 F.3d 370 (2d Cir. 2019); *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 864 (7th Cir. 2018); *Glover v. Jones*, 522 F. Supp. 2d 496, 503 (W.D.N.Y. 2007); *Cain v. Rambert*, 13-CV-5807 (NKB), 2014 U.S. Dist. LEXIS 74188, at *12 (E.D.N.Y. May 30, 2014) ("Courts in this Circuit have construed § 3604(b) of the FHA to prohibit the creation of a 'hostile environment' by individuals who have control or authority over the 'terms, conditions, or privileges of sale or rental of a dwelling,' similar to the prohibition imposed by Title VII against the creation of a hostile work environment."); *Brillhart v. Sharp*, No. 4:CV-07-1121, 2008 U.S. Dist. LEXIS 55624, at *24-26 (M.D. Pa. July 21, 2008) ("Courts have uniformly recognized that sexual harassment is a form of sex discrimination that may violate either § 3604 or § 3617. [collecting cases] These courts have found that sexual harassment is actionable under the FHA because Title VIII shares the same purposes as Title VII under which a plaintiff may bring a hostile work environment claim, because sexual harassment is a form of sex discrimination, and because of the overwhelming precedent that also recognizes a hostile housing environment claim. . . . As with other aspects of FHA claims, courts have analogized Title VIII hostile housing environment claims to Title VII hostile work environment claims, and applied the Title VII standard in analyzing Title VIII claims.") (citations omitted)); *Williams v. Poretsky Mgmt.*, 955 F. Supp. 490, 495 (D. Md. 1996) ("After reviewing these cases, few as they may be, it is not difficult to conclude that this court should recognize sexual harassment as actionable under Title VIII. The Fourth Circuit has recognized that sexual harassment is actionable under Title VII . . .. It also has recognized the shared purpose of Title VII and Title VIII to end discrimination . . .. Moreover, in recognition of these similar aims, it has been willing to import doctrines or interpretations of language accepted under Title VII to Title VIII claims." (citations omitted)).

In the absence of any Third Circuit Court of Appeals rulings regarding the elements of such a claim, the Court is guided by our sister court in Delaware:

> To make out a claim for discrimination resulting from a hostile housing environment, a plaintiff must show that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected a term, condition, or privilege of housing; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability, if alleged.

*Braun v. Bolton*, Civ. No. 13-1093-RGA, 2013 U.S. Dist. LEXIS 141587, at *7-8 (D. Del. Sept. 2013) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990) (Title VII)) and *Brillhart*, 2008 U.S. Dist. LEXIS 55624, 2008 WL 2857713, at *9).[7]

Although courts in this circuit have acknowledged that hostile housing environment claims exist, *see, e.g., Univ. of Scranton*, 2020 U.S. Dist. LEXIS 187526, at *22 n.109 (M.D. Pa. Oct. 9, 2020), none have addressed whether a landlord can be held liable for tenant-on-tenant harassment. The court in *Univ. of Scranton* seems to indicate that the defendant there, "as either an off-campus housing provider or third-party provider of related services," *Scranton*, 2020 U.S. Dist. LEXIS 187526, at *23, was too far removed for liability to attach. It quotes favorably, however, *Honce v. Vigil*, 1 F.3d 1085, 1088-90 (10th Cir. 1993) (holding that a hostile housing environment claim is actionable under § 3604(b) "when the offensive behavior unreasonably interferes with use and enjoyment of the premises" and is "sufficiently severe or pervasive to alter the conditions of the housing arrangement" (quotation marks omitted)). *Univ. of Scranton*, 2020 U.S. Dist. LEXIS 187526, at *22 n.109.[8]

---

[7] The Court observes that other courts do not employ the "respondeat superior" language. For example, in courts from the Second Circuit, that element can be satisfied with a showing that "'a basis exists for imputing the allegedly harassing conduct to the defendants.'" *Cain*, 2014 U.S. Dist. LEXIS 74188, at *15 (citation omitted). The Kansas District Court simply requires that the defendant knew or should have known about the harassment. *Smith v. Mission Assocs.*, 225 F. Supp. 2d 1293, 1298-99 (D. Kan. 2002) ("The elements necessary for a prima facie case of hostile housing environment are 1) plaintiffs are members of a protected class, 2) the conduct was unwelcome, 3) the conduct was based on the race of plaintiffs, 4) it was sufficiently severe or pervasive to alter the plaintiffs' living conditions and create an abusive environment and 5) defendant knew or should have known about the harassment.").

[8] In *Ngiendo v. Univ. Partners, LLC*, Case No. 2:20-cv-02393-HLT-TJJ, 2021 U.S. Dist. LEXIS 206984 (D. Kan. Oct. 27, 2021), the Kansas District Court comments:

> The Court is aware that a circuit split is developing on when a landlord can be held liable to a tenant for a hostile environment created by other tenants. *Compare Francis v. Kings Park Manor, Inc.*, 992 F.3d 67 (2d Cir. 2021) (en banc) (holding that a plaintiff generally fails to state a claim under the FHA for intentional discrimination when the landlord fails to respond to

*Allen v. Virgin Islands Housing Authority.*
Case No. 3:22-cv-0048
Memorandum Opinion
Page 15 of 16

Due to this lack of controlling caselaw in this circuit, the Court looks to Title VII cases for direction. In *Peterkin v. Prospect Airport Servs.*, Civil Action No. 21-490, 2021 U.S. Dist. LEXIS 109612 (E.D. Pa. June 11, 2021), the plaintiff, a flight attendant, sued her employer for hostile work environment discrimination based upon comments made by passengers. The district court first remarks,

> But Ms. Peterkin's pleading is deficient because she fails to allege facts to support a basis for employer liability. Unlike most hostile work environment cases, Ms. Peterkin complains about the comments of passengers, not co-workers or supervisors. Employers are not automatically liable for a hostile environment. . . . Where a hostile work environment is created by non-supervisory co-workers, the employer is liable if it knew or should have known about the conduct and failed to either provide a reasonable avenue for complaint or to take prompt and appropriate remedial action.

*Id*. at *45 (footnote omitted). The court then acknowledges that "[a]n employer may be liable under Title VII for the conduct of third parties *if the employer knew about the conduct and failed to take reasonable remedial action in response*. . . ." *Id*. at *45 and n.139 (emphasis added) (collecting cases in omitted footnote). Accordingly, the Court concludes that a claim for hostile housing environment against VIHA may lie for conduct of not only VIHA's employees, but also co-tenants. At the same time, the Court finds, here, that Plaintiff's allegation of "repeated" harassment, *see* Compl. at 5, without more, does not constitute "severe and pervasive" harassment, a required element to establish the claim. Consequently, Plaintiff fails to allege plausible claims for hostile housing environment, and the Court will dismiss them.

## IV. CONCLUSION

Based upon the foregoing, the Court will deny Plaintiff's motion to proceed *in forma pauperis*. Such denial will be without prejudice to allow Plaintiff to re-file a properly and fully completed motion. Because the Court finds that Plaintiff cannot maintain claims for violations of the criminal statutes 18 U.S.C. §§ 841 and 842 nor a claim pursuant to 42 U.S.C.

---

reports of race-based harassment by a fellow tenant), *with Wetzel v. Glen St. Andrew Living Cmty.*, LLC, 901 F.3d 856 (7th Cir. 2018) (holding that a landlord is liable under the FHA when it has actual notice of tenant-on-tenant harassment based on a protected status). The Tenth Circuit has not yet extended its hostile housing environment analysis to tenant-on-tenant conduct. *See Honce*, 1 F.3d at 1090 (applying hostile environment analysis to a landlord's own conduct).

*Id*. at *22 n.8.

§1983, the Court will dismiss those claims with prejudice. Having found that Plaintiff's complaint lacks sufficient allegations to maintain a claim for failure to accommodate whether asserted under the Fair Housing Amendments Act, the Rehabilitation Act, or the Americans with Disability Act, as well as claims for hostile housing environment, the Court also will dismiss those claims. However, given the Third Circuit's declaration that "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile," *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3rd Cir. 2008), the dismissal of those claims will be without prejudice, granting Plaintiff leave to amend her complaint and cure any deficiencies.

      An appropriate order follows.

**Dated:** August 28, 2023           */s/ Robert A. Molloy*

                                                    **ROBERT A. MOLLOY**
                                                    **Chief Judge**